**LOMAS MORTGAGE U.S.A., INC., Plaintiff,**

v.

**W.E. O'NEIL CONSTRUCTION CO.; Patrick F. Daly & Associates, Ltd.; Armanco, Inc.; Joseph A. Schudt & Associates, Inc.; and STS Consultants, Ltd., Defendants.**

**No. 92 C 6618.**

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1993.

**842**

Norman John Barry, Jr., John Manion McGarry, Baker & McKenzie, Chicago, IL, Dewey R. Hicks, Jr., Cecilia A. Ackels, Baker & McKenzie, Dallas, TX, for Lomas Mortg. USA, Inc., plaintiff.

John L. Huff, Gregory John Bueche, Huff & Gaines, Cristofer E. Lord, Chicago, IL, for W.E. O'Neil Const. Co., defendant.

James M. Hoey, Jon B. Masini, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Patrick F. Daly & Associates, Ltd., defendant.

Steven G.M. Stein, Eric Louis Singer, Stein, Ray & Conway, Chicago, IL, for Armanco Inc., Joseph A. Schudt & Associates, Inc., defendants.

Thomas R. Mulroy, Jr., Christopher C. Dickinson, Jenner & Block, Chicago, IL, for STS Consultants Ltd., defendant.

John L. Huff, Gregory John Bueche, Huff & Gaines, Cristofer E. Lord, Chicago, IL, for W.E. O'Neil Const. Co., third-party plaintiff.

## ORDER

NORGLE, District Judge.

Before the court is defendant STS Consultants, Ltd.'s ("STS") motion to dismiss or, in the alternative, to stay litigation and compel arbitration. For reasons stated below, the court denies the motion to dismiss, but grants the motion to stay litigation and compel arbitration of the claims against STS.

## FACTS

Plaintiff Lomas Mortgage U.S.A., Inc. ("Lomas") brings this suit to recover for the faulty design and construction of Olympia Corners Shopping Center, a retail shopping center located in Olympia Fields, Illinois. STS was hired as the consulting engineer to perform sub-surface geotechnical evaluations during different phases of the preparation for and construction of the Olympia Corners Shopping Center. Lomas alleges in the complaint that cracks and settlement damage developed in the foundation and interior walls of a portion of the shopping center occupied by a Jewel/Osco store. Count III alleges STS breached its contract by failing to adequately monitor construction of the foundation for the shopping center, to ensure that appropriate fill material was used for the foundation, and to report defects in the construction. Count VI alleges breach of implied warranty to perform construction monitoring services in a good and workmanlike manner. STS's motion is directed at these two counts.

The purported basis of Lomas's complaint are three contracts between STS and J.O.F. Venture ("J.O.F.").[1] Lomas alleges that J.O.F. and a company called L & N Consultants, Inc. ("L & N") "entered into a blanket transfer, a bill of sale and assignment, a trustee's deed, an assignment of leases and contracts, and an agreement to transfer collateral, giving [L & N] title to Olympia Corners and all contracts relating to it." Lomas is in some way affiliated with L & N,[2] the alleged assignee of the

---

1. Although the complaint only mentions J.O.F., the briefs in support and opposition to the motion indicate that the contracts were between STS and MRX Development ("MRX"), an entity with whom J.O.F. is purportedly affiliated. The court will refer to the two entities collectively as "J.O.F." for clarity.

2. The complaint provides no explanation of the relationship, corporate or otherwise, among Lomas & Nettleton Company, L & N Consultants, Inc. and Lomas. And there is no explanation as to how Lomas obtained contract rights purport-

edly assigned to L & N Consultants, Inc. In an exhibit attached to its response to the motion, counsel for Lomas asserts in a letter to counsel for STS that "[a]s is evident from our complaint, by virtue of my client's foreclosure on the property it became a legal assignee of all rights of MRX/J.O.F. under the contracts with STS." Although not at all clear from the face of the complaint, the court will assume for purposes of this motion that Lomas properly obtained the rights of L & N through its affiliation with L & N or through assignment because STS did not

contract rights of J.O.F. In each of STS's contracts, however, STS incorporated a non-assignability clause to prevent an assignment of interests in the contract, absent written consent from the other party. STS's consent to any assignment was not obtained.

While both parties agree that the liability issues should be resolved through arbitration, STS ardently contests whether Lomas can enforce the contracts. STS contends that the non-assignability clauses void an assignment of any part of the contracts absent STS's written consent to the assignment.

## DISCUSSION

■■■ On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991), as well as all reasonable inferences drawn from those allegations, *Nelson v. Monroe Regional Medical Center*, 925 F.2d 1555, 1558 (7th Cir.), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991). Because federal courts simply require "notice pleading," the court must construe the pleadings liberally, and mere vagueness or lack of detail alone does not constitute sufficient grounds to dismiss a complaint. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Accordingly, a party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir.1992).

■■■ Perhaps unconcerned with the matter, the parties did not brief the question of the proper choice of law in this case. STS boldly asserted in its motion that Illinois law applies. Lomas did not contest this position but cites law from various jurisdictions and gathers support from secondary sources. Additionally, Lomas's complaint cites Texas law in Count VIII to justify its request for attorney's fees. With a principle exception being subject matter jurisdiction, federal courts are counseled to avoid creating issues when the parties are in agreement and when the

issues are not likely to affect the outcome of the case. *See Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir.1991). Suffice it to say, it is sufficiently conceded that Illinois is the state with the most significant relationship to the contract dispute. *See Palmer v. Beverly Enters.*, 823 F.2d 1105, 1107 (7th Cir.1987) (Illinois's choice of law principles require the court to determine which state possesses the most significant contact to the contract issues involved); *Lyons v. Turner Constr. Co.*, 195 Ill. App.3d 36, 141 Ill.Dec. 719, 721–22, 551 N.E.2d 1062, 1064–65 (1990) (same). While the record does not establish the place of contracting in this case, the subject matter and performance of the contracts are based solely in Illinois. *See Gold v. Wolpert*, 876 F.2d 1327, 1330 (7th Cir.1989) (contacts to consider include place of contracting, negotiation, performance, location of subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties). The only aspect of this litigation touching on Texas is Lomas's principle place of business. Accordingly, the court will apply Illinois law.

■■■ In the interpretation of contracts under Illinois law, the court's duty is generally to effectuate the intentions of the parties to the contract. *Blackhawk Hotel Assoc. v. Kaufman*, 85 Ill.2d 59, 51 Ill.Dec. 658, 660, 421 N.E.2d 166, 168 (1981). In doing so, Illinois courts customarily follow the RESTATEMENT (SECOND) OF CONTRACTS. *See id.* 51 Ill.Dec. at 661, 421 N.E.2d at 169 (citing RESTATEMENT OF CONTRACTS and RESTATEMENT (SECOND) OF CONTRACTS); *see also Loyola Univ. Medical Center v. Med Care HMO*, 180 Ill.App.3d 471, 129 Ill.Dec. 360, 364, 535 N.E.2d 1125, 1129 (1989) (citing RESTATEMENT (SECOND) OF CONTRACTS § 321 regarding assignments). The Restatement provides that, unless a contract manifests a different intention, a contractual term prohibiting the assignment of rights under a contract "does not forbid assignment of a right to damages for breach of the whole contract ..." and "does not render the assignment ineffective...." RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(a), (b).

attack this portion of the pleadings except in passing in a footnote.

■ The contracts *sub judice* provide that "[n]either the Client nor STS may delegate, assign, sublet or transfer its duties, responsibilities or interests in this Agreement without the written consent of the other Party." Regardless of how these agreements were purportedly assigned, this language does not clearly and unambiguously prohibit the assignment of the right to pursue a claim for breach of the contract. The term "interests" does not manifest an intent to include the right to sue. If it were intended, the parties would have been specific in their reference to the right to pursue a damage claim. *Cf. P.A. Bergner & Co. v. Lloyds Jewelers, Inc.*, 112 Ill.2d 196, 97 Ill.Dec. 415, 418, 492 N.E.2d 1288, 1291 (1986) (contracts given plain and ordinary meaning). Further, the terms of the contract do not specifically render void an attempted assignment of a portion of the contract. *See, e.g., State Street Furniture Co. v. Armour & Co.*, 345 Ill. 160, 163–65, 177 N.E. 702, 704 (1931) (assignment of wages in contravention of anti-assignment clause requiring written consent did not render assignment ineffective); *University Mews Associates v. Jeanmarie*, 122 Misc.2d 434, 471 N.Y.S.2d 457, 461 (N.Y.Sup.Ct.1983) (contract clause must specifically eliminate power, as well as right, to assign contract in order for assignment to be ineffective). The clause contained in STS's contracts merely restricts the right to assign by requiring notice of an assignment and provides STS with a right to damages for breach of the portion of the contract forbidding assignment. *See* Restatement (Second) of Contracts § 322(2)(b).

In addition, strict adherence to the contractual prohibition of assignments to void the assignment in this case is against the apparent intent of the parties and would advance no useful policy. The non-assignability clause appears to be designed to protect an obligee (STS in this instance) from an assignment of duties and responsibilities of the contract while the contract is still executory. Thus, during its performance of the contracts, STS would have notice of and an opportunity to respond to the fact that a new entity would be paying its fee or would be performing any particular obligation under the contract. Further, the client in the contract would have knowledge that another entity would be assuming STS's obligations under the contract or would be assuming its interest in receiving payment under the contract. *See Overseas Development Disc Corp. v. Sangamo Constr.*, 686 F.2d 498, 505 (7th Cir.1982) (obligor is entitled to know whom to pay). In either of these circumstances, a failure to obtain permission for an attempted assignment would severely alter the expectations of the other party to the contract during its performance of the contract and would likely excuse performance of the contract. But in the present situation, the contracts are no longer executory—STS has fully performed its services (though allegedly in an imperfect manner). *Cf. Loyola Univ.*, 129 Ill.Dec. at 364, 535 N.E.2d at 1129 (after the contract is completed and all that remains to be done is pay the amount due, the personal character, credit, and substance of the party with whom the contract is made is no longer material) (citing *Ginsburg v. Bull Dog Auto Fire Ins. Ass'n*, 328 Ill. 571, 573, 160 N.E. 145 (1928)).

Where the right assigned is tantamount to an interest in receiving either payment or a damage claim, the one obligated to pay cannot complain that he or she must pay Entity A as opposed to Entity B. His or her obligation is not altered in any way. Illinois law recognizes that an assignee for collection may sue as the real party in interest although the contract itself may be unassignable. *Kennedy v. Deere & Co.*, 142 Ill.App.3d 781, 96 Ill.Dec. 957, 960, 492 N.E.2d 199, 202 (1986), *aff'd*, 118 Ill.2d 69, 112 Ill.Dec. 705, 514 N.E.2d 171 (1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). Although STS is correct to note that this is not a collection case, and Lomas does not purport to be an assignee for collection purposes, the assignments in the present case are "tantamount to an assignment of money due" as Lomas urges. Although no judgment has been entered against STS on the contracts, a *de facto* debtor-creditor relationship is established by the breach of the contract itself, thus giving the aggrieved party a

right to the damages which have accrued. Thus, the common thread in the cases cited by Lomas, that a party may freely assign an established right to payment or compensation, does extend to the circumstances surrounding the case at bar. This is the position advanced by the RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(a). Lomas is merely attempting to exercise the right to recover damages for a breach. Because the contract does not explicitly restrict Lomas's ability to do so, the claim will not be dismissed.

As for the alternative motion to stay litigation and compel arbitration, the parties agree that the substantive issues of Lomas's claim against STS should be submitted to an arbitrator. STS's contracts each contain an arbitration clause. Accordingly, because STS's motion to dismiss is denied, the court grants the alternative motion to stay litigation against STS and to compel arbitration between Lomas and STS.

## CONCLUSION

For the aforementioned reasons, the court denies the motion to dismiss, but grants the motion to stay litigation and compel arbitration of the claims as they relate to STS.

IT IS SO ORDERED.